U0NITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,                    Case No. 08-20215

    Plaintiff,                                  Honorable Thomas L. Ludington

v.

CHESTER PEARSON,

    Defendant.
_____/

**ORDER GRANTING IN PART THE GOVERNMENT'S MOTION FOR REPORT AND FOR ACCESS TO DEFENDANT'S PROBATION FILE**

On February 5, 2008, Defendant Chester Pearson was arraigned on a one-count information charging him with Distribution of Over 5 Grams of Cocaine Base in violation of 21 U.S.C. § 841(a)(1). The same day, Defendant Pearson pled guilty. He was sentenced on July 16, 2009, to 36 months in custody with 4 years of supervised release to follow. The term of custody imposed by the sentence was a variance from the advisory U.S. Sentencing Guideline range of 46 to 57 months. The Court imposed three special conditions of supervision, that Defendant Pearson: participate in a program to address his substance abuse problems, not consume alcohol or controlled substances, and remain gainfully employed. Defendant Pearson was placed on supervised release on July 18, 2011. Defendant Pearson's adaptation to life outside of custody did not, in his probation officer's view, proceed successfully. She did not, however, seek a revocation of his supervised release pursuant to Federal Rule of Criminal Procedure 32.1(b).

Instead, the probation officer asked Defendant Pearson on February 12, 2012, to agree to amend his conditions of supervised release to reside at Bannum Place, a halfway house facility located in Saginaw, Michigan, for six months. Defendant Pearson was unwilling to do so.

On February 29, 2012, the probation officer completed a Supervision Report that was delivered to chambers supporting a Request for Summons and Modification of the Conditions or Term of Supervision. The report was completed on a Form 12D, which is a form that has been approved for use nationally but that has not been utilized within the Eastern District of Michigan as a procedure. The Form 12D is meant, as the Court understands it, to implement Federal Rule of Criminal Procedure 32.1(c) which provides that before the Court modifies "the conditions of probation or supervised release, [it] must hold a hearing, at which the [defendant] has the right to counsel and an opportunity to make a statement and present any information in mitigation."

The Court has rescheduled a hearing for July 9, 2012, having been informed that the probation officer did not believe a previous stipulation for a three-month term at Bannum Place adequately addressed Defendant Pearson's behavior.

A probation officer is expected to balance his or her responsibility to their client, the Court, and the community. *United States v. Jackson*, No. 3:02-00181, 2009 WL 3805588, at *4-5 (M.D. Tenn. Nov. 12, 2009), provides an especially helpful overview of this responsibility:

> From a historical perspective, the 1910 legislation establishing parole (now probation) stated that: "the parole officer's job was to assist parole applicant in obtaining employment and supervise parolees after releases." *Heller* at 222 (quoting Peter B. Hoffman, U.S. Dept. of Justice, History of the Federal Parole System at 7 (2004)). In 1966, the Bureau of Prisons and Federal Parole Board had a job placement program and in 1986 BOP and the National Institute of Justice operated a job program in which a defendant subject to imminent release or on work release or parole would perform community work for public and non-profit organizations that led to defendants' securing jobs, a critical success factor for successful supervision. *Id.* at 222-23. This program had "extremely positive results", but was later dropped by BOP due to the demands of overcrowding on BOP staff. *Id.* at 223.
>
> Congress and the Supreme Court have spoken to the proper functions of probation officers. Congress has defined the principal duties of probation officers "to aid" in the rehabilitation of the defendant. 18 U.S.C. § 3603(3). See also 18 U.S.C. §§ 3603(2)(4) and (8). To be sure, the probation officer must keep informed as to the

defendant's compliance with his or her conditions of release, but the probation officer is directed to report any observation of a violation of a defendant's condition of release to the district court and the federal prosecutor. 18 U.S.C. § S 3603(8)(B)(3).

As the Supreme Court stated, "Our first point of reference is the character of probation or parole . . . '[T]he purpose is to help individual reintegrate into society as constructive individuals as soon as they are able'. The duty and attitude of the probation or parole officer reflect this purpose . . . .While the parole or probation officer recognizes his double duty to the welfare of his clients and to the safety of the general community, by and large concern for the client dominates his professional attitude. The parole agent ordinarily defines his role as representing his client's best interests as long as these do not constitute a threat to public safety." *Gagnon v. Scarpelli*, 411 U.S. 778, 78-845, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (quoting *Morrissey v. Vrewer*, 408 U.S. 471, 477, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and F. Remington et al. Criminal Justice Administration, Materials and Cases (1969)). The Supreme Court also stated, "[b]ecause the probation officer or parole officer's function is not so much to compel conformance to a strict code of behavior as to supervise a course of rehabilitation, he has been entrusted traditionally with broad discretion to judge the progress of rehabilitation in individual cases, and has been armed with the power to recommend or even to declare revocation." *Gagnon*, 411 U.S. at 784. " 'Revocation . . . is, if anything, commonly treated as a failure of supervision." *Id.* at 785 (quoting *Remington* at 7, n. 10).

To be sure, contemporary commentators have observed that "parole supervision [unfortunately] has shifted away from providing services to parolees and more toward providing surveillance activities such as drug testing, monitoring curfew and collecting restitution. As a result, many probation and parole officers do not now help offenders overcome the overwhelming obstacles to getting a job." *Heller* at 244 (quoting Joan Pertersilia "When Prisoners Come Home: Parole and Prisoner Reentry" 88 (2003)). Federal probation officers acknowledge a philosophical difference in how they approach the performance of their duties. The two basic categories are the "uncompromising approach" or "law enforcement" and the "therapeutic agent" or "social worker-medical approach". *Torres* at 48, 49. Other variations are the "time server" and "synthetic officer" approach. Id. Of the two major types, the law enforcement or "cop" approach is "more inclined to violate or recommend revocation for probation violation." *Id.* at 48. The "therapeutic agent" or "social worker-medical approach . . . stresses casework and treatment." *Id.* In the Court's view, the statutory duty to aid in rehabilitation and the legislative history on supervised release promote rehabilitation as the probation officer's core duty.

Under the statutory framework of 18 U.S.C.A. § 3603 the probation officer is under a

continuing obligation to keep the court informed of the activities of persons under its supervision.

He or she is essentially an investigative and supervisory "arm of the court," *United States v. Johnson*, 935 F.2d 47, 49 (4th Cir. 1991), or, as another court has put it, serves as the "eyes and ears" of the court. *Schiff v. Dorsey*, 877 F. Supp. 73, 78 (D. Conn.1994). The Court relies on the probable cause determination from the probation officer regarding violations of supervision, but is also reliant on the probation officer for information regarding whether and how revocation proceedings should be initiated.

If an application is made for revocation of supervised release, Rule 32.1(b) of the Federal Rules of Criminal Procedure provides that upon receiving notice from the probation officer regarding a potential violation, the United States Attorney is to prosecute the action and present evidence in support of the allegations of a violation. *United States v. Burnette*, 980 F. Supp. 1429, 1434 (M.D. Ala. 1997). The probation officer's participation in the guilt-or-innocence phase of the proceeding is limited to being a sworn witness, if he or she is called by either the United States Attorney, the defendant, or the court. *Id.* At the hearing, the probation officer makes no presentation or recommendation as to the guilt or innocence of the defendant; only the defendant or his attorney and the United States Attorney argue the defendant's guilt or innocence. *Id.* Other than initiating the proceedings with the filing of the petition, and possibly serving as a witness, the probation officer plays no role in the determination of the defendant's guilt or innocence. *Id.* The court determines guilt or innocence independently based solely on the evidence presented at the Rule 32.1(b) hearing. *Id.*

Only if the defendant is found guilty of violating the conditions of supervised release does the probation officer resume a non-witness role. At that juncture, the Court relies on the probation officer to make a recommendation of what action it should take in light of the finding of guilt of

violating the condition's of supervised release. *Id.* The information developed by the probation officer, as the professional Congress has designated to the Court to be its eyes and ears and to put together for the Court the composite view of all the circumstances, is necessary to reach an informed decision.

However, a Rule 32.1(c) modification—as opposed to a Rule 32.1(b) revocation—does not require an evidentiary hearing or a violation finding. *Compare* Fed. R. Crim. P. 32.1(b) (providing for, inter alia, right to evidentiary hearing and counsel before "revocation") *with* Fed. R. Crim. P. 32.1(c) (providing for "a hearing, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation" before "modif[ication]").

The immediate motion before the Court was filed on June 12, 2012, by the Assistant United States Attorney, seeking a violation report and the file maintained by the probation department regarding Defendant Pearson's supervision. A violation report is not necessary at this juncture to address the concerns raised regarding Defendant Pearson's supervision; the Supervision Report tendered to the Court is sufficient. The probation officer shall furnish the United States Attorney and defense counsel with a copy of the Supervision Report tendered to the Court supporting the request for the modification of the conditions for supervision as well as any supporting records and documents maintained in Defendant's file by the probation department. The documents maintained by the probation department are necessary to allow the Assistant United States Attorney to adequately address the request for a modification of Defendant Pearson's supervised release, as well for defense counsel to adequately represent his client's interests.

Accordingly, it is **ORDERED** that the Government's motion for an order directing the probation officer to prepare a violation report and to allow the parties access to the supervision filed

(ECF No. 38) is **GRANTED IN PART**. The probation officer is directed to provide the Supervision

Report and supporting documents to the Assistant United States Attorney and defense counsel.

                                                             s/Thomas L. Ludington
                                                             THOMAS L. LUDINGTON
                                                             United States District Judge

Dated: June 27, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 27, 2012.

                              s/Tracy A. Jacobs
                              TRACY A. JACOBS